## METROPOLITAN LIFE INS. CO. v. PARKS.
(8 Div. 588.)

(Supreme Court of Alabama.    Nov. 1, 1923.)

**Evidence ☞383(3)—Certified copy of death certificate record prima facie evidence as to cause.**

Where a policy of life insurance, dated three weeks before insured's death, provided that insurer assumed no obligation unless, on the date of the policy, insured be alive and in sound health, a certified copy of the death certificate on file with the county health officer, which recited that insured was a drug addict and that this caused his death, was prima facie evidence of the nature of the disease causing insured's death, and hence that insured suffered from that disease at the time of the delivery of the policy.

Appeal from Circuit Court, Madison County; Robert C. Brickell, Judge.

Action on a policy of life insurance by Bettie Parks, as administratrix of the estate of Floyd Parks, deceased, against the Metropolitan Life Insurance Company. From a judgment for plaintiff, defendant appeals. Transferred from Court of Appeals under Acts 1911, p. 449, § 6. Reversed and remanded.

Eyster & Eyster, of Albany, for appellant.

Certificate of the death of Floyd Parks was presumptive evidence of the matters therein contained, and was admissible. Acts 1919, pp. 909–919; Acts 1915, p. 782; Code 1907, § 706; Bozicevich v. Kenilworth Merc. Co., 58 Utah, 458, 199 Pac. 406, 17 A. L. R. 346. A provision in the first premium receipt that no obligation was incurred by the company, unless at date of delivery of policy insured was in sound health, is binding. Comm. L. I. Co. v. Davis, 136 Ky. 339, 124 S. W. 345; Bell v. Mo. State L. I. Co., 166 Mo. App. 390, 149 S. W. 33; Amer. Bankers' Ins. Co. v. Thomas, 53 Okl. 11, 154 Pac. 44; 13 Am. Dig. Ins. 136.

White & Watts, of Huntsville, for appellee.

The death certificate was not admissible as evidence in a controversy between private parties. Pence v. Myers, 180 Ind. 282, 101 N. E. 716; Beglin v. Metropolitian, 173 N. Y. 374, 66 N. E. 102.

SAYRE, J. Plaintiff (appellee) had judgment on a policy of insurance on the life of her husband issued by defendant. Defense

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

was made under the general issue "with leave to offer in evidence any matter or thing that, if specially pleaded, would constitute a good defense." One condition of the policy (among others) was that "no obligation is assumed by the company prior to the date hereof, nor unless on said date the insured is alive and in sound health," and defendant undertook to show a breach of this stipulation—warranty, as we have held—that insured, at the time of the delivery of the policy, suffered from no disease which increased the risk of loss. Mutual Life Ins. Co. v. Mandelbaum, 207 Ala. 234, 92 South. 440.

It appeared in evidence, without dispute, that the policy in suit was dated October 27, 1919. On the next day a physician was called to see insured, who had then—if not before—taken to his bed with his last illness. Insured died November 18, 1919. Defendant offered evidence tending to show that shortly before his last illness insured had suffered from other diseases, and that at the time of the delivery of the policy, and for some years before, he suffered from chronic opium poison, or, as some of the medical witnesses stated, subacute opium poison; in other words was a drug addict, and that this caused his death. This fact it was proposed to show by a properly certified copy of the death certificate on file in the office of the county health officer of Madison county which recited the fact. This evidence was excluded by the ruling of the trial court, and the exception to this ruling constitutes the chief matter of controversy on this appeal. Our judgment is that in this the court committed error.

The question is well argued in Bozicevich v. Kenilworth Mercantile Co., 58 Utah, 458, 199 Pac. 406, 17 A. L. R. 346, where the text-writers are quoted, and it may serve a useful purpose to repeat what is there found:

"The law in that regard is well stated in 3 Jones, Comm. Ev., § 508. The author quotes the following from Stephen on Evidence: 'An entry in any record, official book, or register kept in any state, or at sea, or in any foreign country, stating, for the purpose of being referred to by the public, a fact in issue or relevant, or deemed to be relevant thereto, and made in proper time by any person in the discharge of any duty imposed upon him by the law of the place in which such record, book, or register is kept, is itself deemed to be a relevant fact.'

"The author then proceeds as follows: 'And the law here is practically the same. The cases are numerous that the entries are competent evidence where the nature of the office seems to require them and whether the duty to make them is enjoined by statute or by a superior officer in the performance of [official] duty. So long as the one making them was in discharge of a public and official duty in so keeping the book of entry, it is sufficient. Such entries are generally made by those who can have no motive to suppress the truth or to fabricate testimony. Moreover, in many cases they are made in the discharge of duty, pursuant to an oath of office. In his work on Evidence, Taylor mentions a large number of books of this character which the law recognizes as official registers; for example, among others, parish registers, registers of births, marriages, and deaths, made pursuant to the registration acts, land tax assessments, bishops' registers, books kept at public prisons, official logbooks, books kept by the coast guard showing the state of wind and weather, registers of parliamentary votes, customhouse revenue books, and books of other public offices.'

"The author further states that at common law such records 'were admissible' if it 'be shown that they were required by law as kept for public benefit,' and continues further: 'In the United States somewhat greater latitude seems to have been allowed; and it has frequently been held that such entries are admissible if made in the course of official duty, although not required to be made by law.'

"In speaking of the probative effect of such records, it is said: 'Although such records are admissible, they do not in general import absolute verity, but are treated as prima facie evidence of the facts entered and of the documents recorded.' See 3 Jones, Comm. Ev., §§ 508, 509, 511.

"Mr. Wigmore, in his unexcelled work on Evidence (volume 3, §§ 1642 to 1646, inclusive), clearly states the reasons why and the purposes for which such records are admissible as evidence of the facts stated therein.

"The contents of such records have therefore been received as prima facie evidence for at least several centuries."

On this statement of the law our conclusion is that the certificate offered in evidence was admissible, not only as going to show the fact of death—which was not in dispute—but as competent evidence, prima facie, of the nature of the disease causing the death of insured, and hence, by easy inference, that he suffered from that disease at the time of the delivery of the policy.

We prefer at this time to state no conclusion whether, this evidence admitted, judgment should have been rendered for plaintiff or defendant.

Reversed and remanded.

ANDERSON, C. J., and GARDNER and MILLER, JJ., concur.