194 So. 655

**WOODMEN OF THE WORLD LIFE INS. SOC. v. GUYTON.**

6 Div. 642.

Supreme Court of Alabama.
March 14, 1940.

Arthur Fite, of Jasper, and Fite and Fite, of Hamilton, for appellant.

Pennington & Tweedy, of Jasper, and J. C. Milner, of Vernon, for appellee.

KNIGHT, Justice.

Suit by appellee, plaintiff, on an insurance certificate, issued by the appellant to Jonie Lee Guyton, with the plaintiff as beneficiary. The certificate was issued on

July 14, 1936, and the acceptance slip was signed by the insured on July 18, 1936. This acceptance slip warranted that the insured was then in good health and had not been sick or injured since the date of the application for the certificate.

The original certificate of insurance was issued by the Sovereign Camp of the Woodmen of the World, but before the trial the name of the defendant had been changed to the Woodmen of the World Life Insurance Society, and the complaint was duly amended to show the then proper name of the defendant.

Upon the trial, there were verdict and judgment for the plaintiff for the sum of $979.65.

The pleadings were in short by consent. The defenses interposed were that the insured had not made the installment payments for September and October, 1937, on the certificate, as required by the constitution and laws of the society, and that the certificate had become void; and also that the insured had turberculosis (a) at the time of making his application on June 25, 1936, and (b) at the time of the issuance of the certificate on July 14, 1936, and (c) at the time of the signing of the acceptance slip on June 18, 1936. The insured died on November 27, 1937.

The evidence bearing upon the question of whether or not the insured had tuberculosis at the time he applied for the insurance, or at the time he signed the acceptance slip stating that he was then in good health, was such as to require its submission on that issue to the jury.

It is first insisted that the court committed reversible error in refusing to allow the defendant to read in evidence two certain certified copies of the records of the State Health Department, one on file in the State Health Department, and the other on file in the Lamar County Health Department, purporting to show a physical examination of the insured on June 2, 1936.

The paper mentioned in assignment of error number two was a document on file in the office of the County Health Office of Lamar County. This document purported to be an examination by the State Health Department of Lee Guyton, to ascertain whether or not the subject of the examination had tuberculosis. The second paper was a properly certified copy of the original finding and report filed and recorded in the State Health Department.

This last paper bears the certificate of Dr. J. N. Baker, State Health Officer. The first does not, nor does it have the certificate of any one, but was found by Dr. D. R. Brown in the file of papers in the office of the County Health Office of Lamar County. Dr. Brown testified that he did not know who made the examination, or who put it in the file; that he found it among the files in that office.

The evidence offered to identify the document found in the office of the county health office was entirely too uncertain and indefinite to justify its admission in evidence. There was, therefore, no error in refusing to admit it in evidence.

However, the examination and report thereon, certified to by Dr. Baker (which was in all respects the same as the one found in the office of the County Health Office of Lamar County), presents a question, which, so far as we have been able to discover by a diligent search, has not heretofore been passed upon by this court.

We have held that a duly authenticated and certified copy of a death certificate, on file in the office of the county health officer, was admissible in evidence, not only to show the fact of death, but as competent evidence, prima facie, of the nature of the disease causing the death of the insured. Metropolitan Life Ins. Co. v. Parks, 210 Ala. 261, 97 So. 788.

In reaching its conclusion in the above cited case, this court, in an opinion by Justice Sayre, quoted with approval the following from the opinion of the court in the case of Bozicevich v. Kenilworth Mercantile Co., 58 Utah 458, 199 P. 406, 17 A.L.R. 346:

" 'The law in that regard is well stated in 3 Jones, Comm.Ev., § 508. The author quotes the following from Stephen on Evidence: "An entry in any record, official book, or register kept in any state, or at sea, or in any foreign country, stating, for the purpose of being referred to by the public, a fact in issue or relevant, or deemed to be relevant thereto, and made in proper time by any person in the discharge of any duty imposed upon him by the law of the place in which such record, book, or register is kept, is itself deemed to be a relevant fact."

" 'The author then proceeds as follows: "And the law here is practically the same. The cases are numerous that the entries are competent evidence where the nature

of the office seems to require them and whether the duty to make them is enjoined by statute or by a superior officer in the performance of [official] duty. So long as the one making them was in discharge of a public and official duty in so keeping the book of entry, it is sufficient. Such entries are generally made by those who can have no motive to suppress the truth or to fabricate testimony. Moreover, in many cases they are made in the discharge of duty, pursuant to an oath of office. In his work on Evidence, Taylor mentions a large number of books of this character which the law recognizes as official registers; for example, among others, parish registers, registers of births, marriages, and deaths, made pursuant to the registration acts, land tax assessments, bishops' registers, books kept at public prisons, official logbooks, books kept by the coast-guard showing the state of wind and weather, registers of parliamentary votes, customhouse revenue books, and books of other public offices."

" 'The author further states that at common law such records "were admissible" if it "be shown that they were required by law as kept for public benefit," and continues further: "In the United States somewhat greater latitude seems to have been allowed; and it has frequently been held that such entries are admissible if made in the course of official duty, although not required to be made by law."

" 'In speaking of the probative effect of such records, it is said: "Although such records are admissible, they do not in general import absolute verity, but are treated as prima facie evidence of the facts entered and of the documents recorded." See 3 Jones, Comm.Ev., §§ 508, 509, 511.

" 'Mr. Wigmore, in his unexcelled work on Evidence (volume 3, §§ 1642 to 1646, inclusive), clearly states the reasons why and the purposes for which such records are admissible as evidence of the facts stated therein.

" 'The contents of such records have therefore been received as prima facie evidence for at least several centuries.' "

The evidence leaves no room for doubt that Jonie Lee Guyton, the person to whom the insurance certificate was issued, was the same person referred to in the document certified to by Dr. Baker, the State Health Officer, and which the defendant undertook to read in evidence.

It also appears from the evidence that Dr. Roberts, a physician at Vernon, Alabama, who had treated the insured, had him examined, prior to the issuance of the insurance contract, and without reference thereto, by some one connected with the State Health Department, and that he had received a report from the said department showing the result of that examination.

We confess we have been unable to find any *express statutory authority* for the admission in evidence of documents of the kind now before the court, but it must be noted that there are many well recognized exceptions to the "hearsay rule," which permit, without statutory authority, evidence otherwise precluded by that rule. This relaxation of the rule is justified in many instances by the necessities of the case, and also, in other instances on account of public convenience and for the public good.

In the case of Kyburg v. Perkins, 6 Cal. 674, 676, Terry, J., in speaking for the court, observed: "To entitle a book to the character of an official register, it is not necessary that it be required by an express statute to be kept, nor that the nature of the office should render the book indispensable; it is sufficient that it be directed by the proper authority to be kept."

In Evanston v. Gunn, 99 U.S. 660, 666, 25 L.Ed. 306, it was observed by Strong, J.: "It may be admitted that there is no statute expressly authorizing the admission of such a [meteorological] record as proof of the facts stated in it, but many records are properly admitted without the aid of any statute. * * * The record admitted in this case was not a private entry or memorandum. It had been kept by a person whose public duty it was to record truly the facts stated in it. * * * To entitle them to admission it is not necessary that a statute requires them to be kept. It is sufficient that they are kept in the discharge of a public duty."

Mr. Wigmore, in his work on evidence, Vol. 3, § 1639, p. 406, observes:

"§ 1639. *General Principle, and Sundry Applications. Wherever there is a duty to record official doings, the record thus kept is admissible.* This much is conceded; the judicial language already quoted (*ante,* §§ 1632, 1633) sufficiently illustrates the principle. The only matter of doubt can be whether there is in a given case

a duty to record. It is clear that such a duty need not be expressly prescribed by statute or regulation, but may be implied from the nature of the office (*ante*, §§ 1633, p. 1).

"Further, it may safely be laid down, as a general principle, that *wherever there is a duty to do*, then there is *also a duty to record* the things done. It is not conceivable that governmental work could be adequately carried on without the written preservation of the doings. The necessity for supervision and correction and for future reference to past doings makes this conclusion inevitable. Such a general principle seems not to have been expressly adopted by the Courts, but it is distinctly implied in the body of the decisions.

"It must of course be taken with certain natural qualifications. The theory of official duty does not suppose every officer without exception to be engaged alike in doing and writing; some merely do, and others merely write. The theory applies not so much to individual officers as to each office or administrative group taken as a whole. It is the doings of the office, as such, that are to be recorded by some appropriate officer therein. For example, no one need maintain that the duty of the jail-sentry to watch on the wall implies also a duty to record from time to time the fact that he has watched certain prisoners; and yet the general duty of the prison-warden to keep the persons committed to him does imply a duty to record the persons committed, and the length of time during which they are kept. With this qualification, then, that the principle applies to the doings of an office considered as a whole or as a distinct subdivision, the principle still remains true that wherever an official duty to do is found, there is also a duty on some appropriate person for the office to record the doings. Practically, then, the admissibility of a given register or record depends ultimately on whether the officer has the duty to do the class of things recorded; if they are within his duty, then the record is admissible; otherwise not.

"The question of Evidence thus depends largely on the question of administrative law. Not all the judicial rulings conform strictly to this principle, but it unquestionably represents the general judicial attitude.

"*Statute* has of course frequently stepped in to make expressly admissible many kinds of registers and records. In most instances the statutory declaration was unnecessary. Liberal judicial rulings would have saved the law from the copious statutes."

■ The Legislature of Alabama has appropriated for each fiscal year a sum of money, to be expended yearly by the State Board of Health, among other things and purposes, to conduct campaigns for education as to the causation, propagation and prevention of tuberculosis, hookworm disease, typhoid and malarial fevers and other preventable diseases; and "*to conduct campaigns for the examination of tuberculosis, hookworm diseases, typhoid and malarial fevers, and other preventable diseases, insofar as this may be accomplished.*" Code, § 1159.

This duty is enjoined by positive statute upon the State Health Department. Necessarily the duty enjoined, carries with it the duty to make and keep records, and these records are, when properly certified, admissible in evidence. Wigmore on Evidence, Vol. 3, § 1639; Miller & Co. v. Boykin, 70 Ala. 469; Code, § 7681.

■■ The common law is not static, but is constantly undergoing change, and extension, to meet changing conditions, due to the ever expanding business and social fabric. So, too, rules of evidence cannot remain static, but must be given a reasonable and liberal construction to meet and serve the purposes and requirements of changing conditions.

■ We conclude, therefore, that the trial court committed reversible error in refusing to permit the defendant to introduce in evidence the certified copy of the examination of the insured furnished by the State Health Department. This certificate was competent evidence, prima facie of the matters therein contained.

It is next insisted that the court committed reversible error in certain parts of the court's oral charge, which were duly excepted to, and which submitted to the jury the question of defendant's waiver of payment of premiums within the precise time fixed by the defendant's constitution and by-laws.

We may here state that the question of whether there was or was not default in the payment of any premium when the same fell due, was, under the evidence, one for the determination of the jury.

As tending to show that the defendant had waived the default, if there was any in fact, the plaintiff read in evidence a letter written by the General Attorney, of the defendant to the attorneys of the plaintiff, in reply to a letter written by these attorneys to the defendant, and which the defendant had referred to its general attorney for reply. In this letter of the defendant's general attorney, liability was denied on grounds other than the insured's timely payment of premiums. Having expressly referred this letter from plaintiff's attorneys to the head of its legal department for attention and reply, we are of the opinion that the general attorney, under such circumstances could waive the forfeiture, if any, on account of the failure to pay a premium within the time allowed by the constitution and by-laws of the defendant. The reply of the general attorney must be regarded, under the circumstances, as the defendant's last expression. Hartford Fire Ins. Co. v. Aaron, 226 Ala. 430, 147 So. 628; Sovereign Camp W. O. W. v. Clarke, 229 Ala. 382, 157 So. 259. By denial of liability on one ground, the defendant waived any other defense which it might have had. Watts v. Metropolitan Life Ins. Co., 211 Ala. 404, 406, 100 So. 812.

When the court's entire oral charge, with reference to the asserted waiver, is considered, we think it unobjectionable.

Charges 16 and 17 refused to defendant entirely eliminated the question of waiver of the foreefiture for non-payment of premiums within the time prescribed by the constitution and by-laws of defendant, and were, therefore, bad. The question of waiver was one of the issues in the case.

Charges 18 and 19 refused to the defendant, if not otherwise bad, were misleading, and further they assumed that the policy had become void, which, under the evidence, was a question for the jury.

The only error we find in the case was the refusal of the court to allow the defendant to read in evidence the medical examination of the insured, as certified to by Dr. Baker. For this error, the judgment of the circuit court must be reversed, and the cause remanded for new trial in conformity to this opinion.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.