304 So.2d 881

**Edna M. SWARTZ**

v.

**UNITED STATES STEEL CORPORATION,
a corp. and American Bridge
Co., a corporation.**

**SC 859.**

Supreme Court of Alabama.

Dec. 5, 1974.

Hare, Wynn, Newell & Newton, Corretti, Newsom, Rogers & May, Birmingham, for appellant.

Robert G. Tate and William F. Murray, Jr., Birmingham, for appellee.

HARWOOD, Justice.

In the proceedings below Mrs. Edna M. Swartz filed a suit against the United States Steel Corporation seeking damages for the loss of her husband's consortium because of injuries resulting proximately from the alleged negligence of the Steel Company.

The trial court, on motion of the Steel Company, dismissed the plaintiff's suit, as it was bound to do under the decision of this court in Smith v. United Construction Workers, 271 Ala. 42, 122 So.2d 153 (1960), wherein it was held that a wife has no cause of action under the common law of Alabama for the loss of her husband's consortium resulting from the tortious act of a third party. Smith v. United Construction Workers, supra, which will hereinafter be referred to as *Smith*.

The sole question involved in this appeal is whether the court should, under today's recognition of a married woman's status, continue to adhere to the doctrine enunciated in *Smith*, supra.

At common law a wife had no independent legal status of her own. In legal contemplation she existed largely as a non person. On this basis a wife was denied a cause of action for the loss of her husband's consortium. Despite change in a wife's status through the years, and the enactment of statutes conferring rights on married women, in some instances superior to those of her husband, the common law doctrine that a wife could not sue for the loss of her husband's consortium was continued in the decisions of this country. Realizing that the old common law basis for the rule had become unrealistic in the more modern social fabric, new reasons were assigned for its continuance. In this manner the old doctrine denying a wife's action for loss of her husband's consortium was retained as a vestigial appendage in the body jurisprudence. Analysis of the new reasons set forth for continuing the old doctrine indicates that they simply do not hold water. As usual in such situations, where the reason for the rule fails, the rule eventually falls.

In a landmark decision in 1950, the United States Circuit Court of Appeals for the District of Columbia, in Hitaffer v. Argonne Co., 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366, after a thorough analysis of the existing doctrine that a wife had no cause of action for the loss of her husband's consortium, repudiated the same and held that such cause of action did exist.

In 1960 this court handed down its decision in *Smith*, supra. Although the court was asked to follow Hitaffer v. Argonne Co., supra, this request was disposed of by the observation that only a small minority of courts had seen fit to "create" an action in favor of the wife for loss of her husband's consortium in the wake of *Hitaffer*, supra. The court observed.

"* * * While there is some appeal in the argument and some merit to the contention that the law is inconsistent in this respect, [denial of action for loss of consortium] the common law of England is in force in this state except as changed by statute. Title 1, Sec. 3, Code of Alabama 1940."

Thereafter the court cites and largely relies as authority for its denial of a right in the wife to a cause of action for loss of her husband's consortium, the Florida case of Ripley et al v. Ewell (Fla.), 61 So.2d 420. The court states it is in complete agreement with *Ripley*, supra.

We wish to here note that the court's statement in Smith, supra, that "the common law of England is in force in this state except as changed by statute. Title 1, Sec. 3, Code of Alabama 1940," is overbroad, for in its full context Section 3 reads:

"The common law of England, *so far as not inconsistent with the Constitution, laws and institutions of this state, shall, together with such institutions and laws,* be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the legislature." (Emphasis ours.)

We also think it appropriate at this juncture to point out that in 1971, in Gates v. Foley (Fla.), 247 So.2d 40, the Supreme Court of Florida overruled Ripley v. Ewell, supra, the authority relied on in *Smith,* supra, observing:

"Since Hitaffer v. Argonne Company, *supra,* a flood of authorities in ·other jurisdictions have overturned the common law rule and, on various grounds, allowed the wife to recover. for loss of consortium."

In support of this statement, the Florida court, in a footnote cites cases from Arkansas, Delaware, Georgia, Idaho, Illinois, Indiana, Iowa, Kentucky, Maryland, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Jersey, New York, Ohio, Oregon, Pennsylvania, Rhode Island, South Dakota, Texas, Wisconsin, and Washington, as well as numerous legal textbooks and articles favoring the position that the wife should have a cause of action for loss of her husband's consortium where such right is given to the husband. We have not, in the interest of brevity, set forth the many cases cited in this footnote from the various· jurisdictions, and the legal literature on the subject, but refer those interested in such citations to footnotes 1 and 2 appearing on page 42 of the opinion in Gates v. Foley, supra. To this list may also be added the Massachusetts case of Diaz v. Eli Lilly & Co., Mass., 302 N.E.2d 555, and the California case of Rodriguez v. Bethlehem Steel Corp., 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669. The Massachusetts court not only overruled a number of their prior cases to the effect that neither spouse had a cause of action for loss of consortium, but held that such cause of action could be exercised by either the husband or the wife.

Counsel for appellee has strenuously argued that if the doctrine announced in our case of *Smith,* supra, be overruled, the result would be, (1) An ignoring of the provisions of Title 1, Section 3, Code of Alabama 1940, (2) A repudiation of the doctrine of stare decisis, (3) An invasion of legislative function by judicial decree, (4) Create the possibility of double recovery and destroy the finality of settlements already made with the husband, (5) Create an extension of causes of actions to all who may suffer a loss of a loved one, and (6) Cause insuperable difficulties in the assessment of damages if a wife be allowed an action for· the loss of the consortium of her husband.

,We shall discuss these contentions seriatim.

1. *That to permit the wife a cause of action for the loss of the consortium of her husband would be to ignore the provisions of Title 1, Section 3, of our Code.*

The common law is decisional law. It is not frozen into unchangeable tablets of stone. In 1835, Justice Story in his work "Miscellaneous Writings," at page 307, wrote:

"The common law is gradually changing its old channels and wearing new."

In Hurtado v. California (1884), 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232, the United States Supreme Court wrote:

"This flexibility and capacity for growth and adaption is the peculiar boast and excellence of the common law."

This court has written in Harkness v. Sears & Walker, 26 Ala. 493:

"The common law of England (as has been well remarked by the Supreme Court of the United States) is not to be taken in all respects as to be that of America."

In Woodmen of the World Life Ins. Soc. v. Guyton, 239 Ala. 216, 194 So. 655, this court wrote:

"The common law is not static, but is constantly undergoing change, and extension, to meet the changing conditions, due to the ever expanding business and social fabric."

Title 1, Section 3, aforementioned, we think clearly reflects this invitation to change and growth in the common law of Alabama. While this section provides that the common law of England shall be the rule of decisions, except as it may be altered or repealed by the legislature, it further provides such law shall apply so far as it is not inconsistent with the Constitution, laws, *and institutions* of this state, and the common law together with the laws and institutions shall be the rule of decisions.

We find no constitutional prohibitions denying a wife a cause of action for loss of her husband's consortium. In fact certain provisions of our Constitution would appear to invite the conclusion that such cause of action should be permitted.

Article 1, Section 1, provides:

"That all men are equally free and independent; that they are endowed by their Creator with certain inalienable rights; * * *"

As early as 1871, this court held that the phrase "all men are created equal" includes both sexes. O'Neal v. Robinson, 45 Ala. 526.

Article 1, Section 10, provides:

"That no person shall be barred from prosecuting or defending before any tribunal in this state, by himself or counsel, any civil cause to which he is a party."

Article 1, Section 11, provides:

"That the right of trial by jury shall remain inviolate."

Article 1, Section 13, provides:

"That all courts shall be open; and that every person, for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law."

In Woodson v. Bailey, 210 Ala. 568, 98 So. 809, this court recognized that the right of consortium was a right mutual to both the husband and the wife, as evidenced by the following quotation from that opinion:

"In the early common law it was limited to the rights of the husband growing out of the marriage relation. *In modern law it has come to denote the rights of either consort, and may be said to include those collective rights of either husband or wife resulting from and inherent in the marital union.* These rights have been defined in this form of action to include the person, affection, society, and assistance. The terms 'service,' 'aid,' 'fellowship,' 'companionship,' 'company,' 'co-operation,' and 'comfort' have also been employed in defining *those mutual and special rights growing out of the marriage covenant.* The loss of consortium is the loss of any or all these rights. 12 C.J. 532; 30 C.J. 1123, § 977; 2 Words & Phrases, First Series, 1453; 13 R.C.L. 507." (Emphasis added.)

We also think that the provisions of our statute concerning the rights of married women (Title 34, Sections 65 through 80) commonly referred to as the Married Women's Act, also tend strongly to support the conclusion that a wife should have a cause of action for the loss of the consortium of her husband, as evidenced by the following particular Sections in said Title 34.

Section 65 provides that all property of the wife however acquired is her separate property, and is not subject to the liabilities of her husband.

Section 72, among other things, provides that the wife must sue alone for all injuries to her property or to her person.

■ Under the doctrine set forth in Woodson v. Bailey, supra, a wife's right of consortium must be considered as her separate property right.

■ We have found no decision defining "institutions" in the context of its employment in Title 1, Section 3. We think, however, as used in Title 1, Section 3, the words "institutions" must be construed to mean the customs, mores, and conditions prevailing at the time the matter in question is being considered. We are of the view that the "institutions" prevailing today would necessitate the conclusion that a wife should have the right to sue for the loss of her husband's consortium despite the contrary conclusion reached some fourteen years ago in *Smith,* supra, and that a denial of such right would be inconsistent with our present day institutions.

We therefore find nothing in Title 1, Section 3, necessitating the conclusion reached in *Smith,* supra.

2. *Repudiation of doctrine of stare decisis, and*

3. *An invasion of legislative function by judicial decree.*

We think these two points may well be joined for discussion.

Throughout the years the courts have engaged in housekeeping chores in tidying up the common law of their respective jurisdictions, discarding outworn concepts and refurbishing their common law to meet prevailing social needs.

In the fourteen years since the decision of this court in *Smith,* supra, the then small minority of five jurisdictions allowing the wife to recover for the loss of consortium of her husband have now become an overwhelming majority. As pointed out in Rodriguez v. Bethlehem Steel Corp., 12 Cal.2d 382, 115 Cal.Rptr. 765, 525 P.2d 669, some 31 jurisdictions today allow the wife to recover for the loss of her husband's consortium. In five of these jurisdictions the change was brought about by statutory enactment, while in twenty-six the change was accomplished by judicial decision. These twenty-six jurisdictions are listed, together with citations of the cases announcing the change, in footnote 5, at page 769 of *Rodriguez,* supra, and again we will not list these many citations.

Nor did the courts which have changed the rule by judicial decision find difficulty in so doing. In Gates v. Foley, supra, the Florida court wrote:

"It may be argued that any change in this rule should come from the Legislature. No recitation of authority is needed to indicate that this Court has not been backward in overturning unsound precedent in the area of tort law. Legislative action could, of course, be taken, but we abdicate our own function, in a field peculiarly non-statutory, when we refuse to reconsider an old and unsatisfactory court-made rule."

In Schreiner v. Clay Fruits, Alaska, 519 P.2d 462, the Supreme Court of Alaska quoted with approval the following statement from Dini v. Naidith, 20 Ill.2d 406, 170 N.E.2d 881:

"Inasmuch as the obstacles to the wife's action were 'judge invented,' there is no conceivable reason why they cannot be 'judge destroyed.' [Citations omitted.] We find no wisdom in abdicating to the legislature our essential function of re-evaluating common-law concepts in the light of present day realities."

This court in the recent case of Huskey v. Smith, 289 Ala. 52, 265 So.2d 596, observed as to stare decisis:

"Stare decisis is a salutary doctrine. But blind adherence to a precedent no longer supported by contemporary knowledge or precedent is not required."

Many additional excerpts from cases could be set forth.

The American Law Institute in its first Restatement of the Law of Torts (1938), Section 695, consonant with the then prevailing view, denied to the wife a cause of action for harm caused to her marital interest by one who negligently injured her husband. In 1969, the Institute changed its position to permit such action. (See Rest.2d Torts, Tent.Draft No. 14, Section 695, adopted May 21, 1969.)

We therefore conclude that continuing adherence to the doctrine announced in *Smith,* supra, is not today required or desirable under stare decisis, nor do we feel that we should longer await legislative action to bring our common law into harmony with the realities of today.

### 4. *Possibility of double recovery.*

As before stated, this court in Woodson v. Bailey, 210 Ala. 568, 98 So. 809, fully recognized that both the husband and wife had mutual and special rights and interests growing out of the marriage relationship. This separate right in the wife having been recognized, then it must follow that any third party tortiously injuring the husband should respond in damages for injury to the wife's interest in the continuation of the normal marriage relationship. The husband, too, has a cause of action against the negligent party. Because of the mutuality of interest of the husband and the wife in the marriage, the possibility of overlapping damages must be guarded against. In Diaz v. Eli Lilly & Co. (Mass.), 302 N.E.2d 555, the Massachusetts court pointed out that the key to the problem of double recovery was procedural. The court then elaborated as follows:

"As a practical matter, the consortium claim, when asserted at all, will usually be presented together with the negligence claim for the physical injuries, husband and wife joining in the same action. Such joinder is of course permitted and invited by the procedural rules. When, perchance, separate actions have been brought, the defendant (or plaintiffs in the actions) would normally be entitled to have them consolidated for trial. Further, we think the defendant could ordinarily insist, if he considered it to his advantage, that the other spouse be joined in the main negligence action so that a possible claim for loss of consortium should not be outstanding when the negligence claim was disposed of, leaving a possibility of duplicating recoveries."

The Massachusetts court based its conclusions on Massachusetts procedural rules governing permissive joinder, consolidation, and compulsory joinder, which in turn were based on corresponding provisions of the Federal Rules of Civil Procedure. Likewise our Alabama Rules of Civil Procedure as to Permissive Joinder (Rule 20), Consolidation (Rule 42), and Compulsory Joinder (Rule 19), are in all respects similar to their counterparts in the Federal Rules. We feel that the above mentioned Alabama Rules of Civil Procedure will assure an orderly disposition of all future claims for loss of consortium.

Related to the double recovery contention is appellant's contention that a judicial recognition of a wife's cause of action for loss of consortium would operate retroactively and thereby work an unanticipated hardship on those who had made a settlement only with the husband in reliance upon the previously existing common law rule that a wife had no cause of action for loss of consortium.

Alarm in this regard appears fanciful. The matter being procedural, the courts considering the point have declared that in the interest of fairness and orderly administration of justice, a spouse will not be allowed to maintain an action for loss of consortium, even though the statute of limitations has not run on such action, when the other spouse has received damages from the negligent third party for

such loss, whether by settlement, or judgment, made or rendered prior to the effective date of a decision allowing a wife a cause of action for loss of her husband's consortium. See Deems v. Western Maryland Railway Co., 247 Md. 95, 231 A.2d 514, 525; Diaz v. Eli Lilly & Co. (Mass.) 302 N.E.2d 555, 564; Ekalo v. Constructive Serv. Corp. of Am., 46 N.J. 82, 215 A.2d 1, 8; Millington v. Southeastern Elevator Co., 22 N.Y.2d 498, 293 N.Y.S.2d 305, 312, 239 N.E.2d 897, 902; Rodriguez v. Bethlehem Steel Corp., 12 Cal.3d 382, 115 Cal.Rptr. 765, 525 P.2d 669.

We approve and adopt such rule.

5. *Giving the wife a cause of action for loss of consortium of her husband would lead to an extension of causes of action to all those who suffered a loss of a close relative.*

The right of consortium grows out of the marriage relationship. Each spouse has an interest personal to himself or herself in the maintenance of this interest. An injury to this relationship is a direct injury to a separate right enjoyed by each spouse. Permitting a cause of action against a third party who tortiously injures such right or interest does not envisage that an action should be allowed to those not within the marriage relationship.

6. *Insuperable difficulties would be encountered in the assessment of damages if the wife be allowed an action for loss of consortium.*

There are many situations where difficulties are presented in the assessment of damages, such as damages for loss of consortium recoverable by a husband, the award of damages for pain and suffering, loss of anticipated profits, etc. As stated in Diaz v. Eli Lilly Co., supra:

"The marital interest is quite recognizable and its impairment may be deffinite, serious, and enduring, more so than the pain and suffering or mental or psychic distress for which recovery is now almost routinely allowed in various tort actions."

We see no reason why the trier of fact should be deemed confronted with insuperable difficulties in assessing damages in a wife's suit for loss of her husband's consortium.

For the reasons above set forth, we overrule the case of Smith v. United Construction Workers; 271 Ala. 42, 122 So.2d 153.

■ We hold that in Alabama each spouse has a cause of action for loss of consortium caused by a tortious act of a third party.

Reversed and remanded.

BLOODWORTH and JONES, JJ., concur.

FAULKNER, J., concurs specially.

HEFLIN, C. J., concurs in result.

MERRILL, COLEMAN, MADDOX and McCALL, JJ., dissent.

FAULKNER, Justice (concurring specially).

At common law no cause of action existed in the wife for loss of consortium of her husband.

The common law of England was adopted in this State. Section 3, Title 1, Code of Alabama 1940, Recompiled 1958, provides:

"The common law of England, so far as *it is not inconsistent with the Constitution, laws and institutions of this state,* shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the legislature." (Emphasis added.)

This statute does not provide that "the common law of England shall be the rule of decisions in Alabama unless changed by the legislature." On the contrary, it provides that the common law of England shall be the rule of decisions in this State, so far as the common law is *not incon-*

*sistent with the constitution, the laws, and the institutions of Alabama.*

Article 1, § 1, Constitution of Alabama provides that,

". . . all men are equally free and independent . . . endowed by their Creator with certain inalienable rights . . . among these are life, liberty and the pursuit of happiness."

This court in 1871 recognized that the words, "all men are equally free" includes persons of both sexes. O'Neal v. Robinson, 45 Ala. 526 (1871). The court said that the common law rule of a wife being inferior to her husband was no longer valid. But even today, 103 years later, there is imbedded in some legal minds who worship the shrine of the common law, the honest notion that the wife is still inferior to her husband and should not be considered an equal in the rights of liberty, life, and the pursuit of happiness.

The fundamental law has changed the institutions of the United States and the State of Alabama. We look to humane reasons as well as a deep sense of right. Equal justice under the law are not just empty words appearing over the county courthouse door.

Change in our society is inevitable. In fact, the only thing constant in our society is change. And, the law should keep pace with the changes. The doctrine of stare decisis is not an ironclad, immovable institution of the law, which holds there can never be changes in the law. When the reason for the rule disappears, there is no longer any necessity for the rule.

The apparent reason for the common law rule denying the wife an action for loss of consortium was the fact that under the common law the husband was considered to be superior to the wife in the marital relationship. She was a chattel of the husband. For better or worse, that is no longer true. Ancient ideas that are not justified in our present society must be rejected. Wives are now, in the eyes of the law, equal partners in the marriage.

Neither the husband nor the wife is considered the inferior of the other.

The dissenting opinion says that any change for permitting a wife to bring an action for loss of consortium should rest with the legislature. The legislature could, of course, take action. But, this court would abdicate its role if it refused to reconsider an old and unsatisfactory court-made rule. See Gates v. Foley, 247 So.2d 40 (Fla.1971); Millington v. Southeastern Elevator Co., 22 N.Y.2d 498, 239 N.E.2d 897, 293 N.Y.S.2d 305, 36 A.L.R.3d 891 (1968).

There is another compelling reason for reconsidering the question now presented to this court—the Constitution. In *Smith*, the court did not consider the Constitutional issue. *Smith* denied the wife an action for loss of consortium because the common law rule had not been changed by the legislature, plus the authority of Ripley v. Ewell, 61 So.2d 420 (Fla.1952). The Supreme Court of Florida overruled *Ripley* in *Gates*. Therefore, one of the legs of *Smith* has been severed. The other one is due for immediate surgery. The common law rule denying a wife the right to maintain an action for loss of consortium is not consistent with Article 1, § 1, Constitution of Alabama. If the Constitution is to be given a just meaning, this Article and Section must be interpreted as meaning the wife is the peer and equal of the husband in the rights of life, liberty, and the pursuit of happiness. Consequently, the wife now has the right to bring an action for loss of consortium of her husband arising from the wantonness or negligence of a third party tort feasor.

The appellees argue that to award a wife recovery for loss of consortium will amount to a double recovery of damages. It will not, of course, if properly handled by counsel and the trial court. Under Rule 20, Alabama Rules of Civil Procedure, the wife may join in the action brought by the injured husband, as a plaintiff and assert her right for loss of consortium, provided her claim has not been barred by passage

# 448

of time. If a separate suit is brought by the wife, her case can be consolidated with the injured husband's case under Rule 42, A.R.C.P. Furthermore, the defendant, under Rule 19, A.R.C.P., may join the wife as a proper party to the action brought by her husband, if she has not filed in her own behalf. And, where the husband's case has been terminated on the merits adversely to him, the wife's right to recover for loss of consortium is barred. This is necessarily true because her action is derivative merely and the spouse's being in privity, the judgment in the husband's case is res judicata as to her. See Sisemore v. Neal, 236 Ark. 574, 367 S.W.2d 417, 12 A.L.R. 3d 929 (1963).

Under Rule 49, A.R.C.P., the trial court can make use of special verdicts or interrogatories to the jury, compelling the jury to designate the amount of damages awarded the husband for his injuries, and the amount of damages awarded the wife for loss of her injured husband's consortium.

Finally, the trial court should instruct the jury that the wife is entitled to recover only for loss of consortium which I define as loss of sexual relations, affection, solace, comfort, fellowship and companionship of the husband and wife, and the aid of the one to the other in every conjugal relation. The jury should also be instructed that an award for loss of consortium does not include any loss to the wife for material support of her husband.

HEFLIN, Chief Justice (concurring in the result):

In 1935 the legislature of Alabama abolished the causes of action for alienation of affection, criminal conversation, seduction of any female person of the age of 21 years or over, and breach of contract to marry. Acts of Alabama, 1935, p. 780. The history of the action for alienation of affections is most interesting. In Woodson v. Bailey, 210 Ala. 568, 98 So. 809 (1924), this court stated that the injury sought to be redressed in a suit for

alienation of affections was loss of consortium. At common law an action for alienation of affections was limited to the husband alone. Young v. Young, 236 Ala. 627, 184 So. 187 (1938).

In discussing the effects of the Married Women's Acts (Title 34, Sections 65–80, Code of Alabama of 1940 (Recompiled 1958)) on various personal rights of women, and the action of alienation of affections, Justice Thomas, in Parker v. Newman, 200 Ala. 103, 75 So. 479 (1917), stated as follows:

"Of her statutory rights, section 4493 of the Code [1907] [Title 34, Section 72, Code of Alabama of 1940 (Recompiled 1958)] provides that the wife may sue alone at law or in equity, upon all contracts made by her or with her, or for the recovery of her separate property, or for injuries to such property, or for its rents, income, or profits, 'or for all injuries to her person or reputation.'

"And section 4489 of the Code [1907] [Title 34, Section 68, Code of Alabama of 1940 (Recompiled 1958)] provides that all damages which the wife may be entitled to recover for injuries to her person or reputation is her separate property. *It is thus apparent that the legislative intent was to give to the wife the right of action in such matters that had been accorded to the husband.* People's Home Tel. Co. v. Cockrum, 182 Ala. 547, 62 So. 86; Town of Elba v. Bullard, 152 Ala. 237, 44 So. 412; Engle v. Simmons, 148 Ala. 92, 41 So. 1023, 7 L.R.A.(N.S.) 96, 121 Am.St.Rep. 59, 12 Ann.Cas. 740; Code, §§ 4486–4504. *These statutes are declared to be remedial, and should be construed to effect the purpose of the Legislature.* Knight v. Coleman, 117 Ala. 266, 22 So. 974; Hays v. Bowdoin et al., 159 Ala. 600, 49 So. 122.

"In Engle v. Simmons, supra, it was held that where the defendant entered the dwelling and by threats, or rude or boisterous conduct, put the wife in fear,

she may recover for the personal injury sustained. The court said:

> ' "Nor does it matter, in our judgment, that the trespass was committed on property belonging to the husband. *It was her home as well as that of her husband, and any unlawful entry or invasion thereof which produced physical injury to her was a wrong for which she ought to recover.*" Nor is it important that no physical violence was done her person. * * * The plaintiff here was in her home, and had a right to the peaceful and undisturbed enjoyment of the same, and any unlawful entry or invasion thereof, which produced physical injury to her, whether by direct personal violence, or through nervous excitement the proximate result of the wrongful acts of the defendant, was a wrong for which she is entitled to recover.'
>
> * * * * * *
>
> *"These cases illustrate the construction given the statute of the wife's right of suit for injuries 'to her person.'"* (Emphasis supplied)

In Parker v. Newman, supra, the court went on to hold that a married woman had a right to sue for alienation of affections (a form of loss of consortium) despite the fact that such right of action did not exist at common law, because modern philosophy and the Married Women's Acts dictated that right.

In considering the woman's unequal position at common law, Prosser on Torts (4th Ed. 1971) states at page 881:

> "The altered position of woman in the modern world has swept all this into history, and in virtually all states the wife is now given the same rights and remedies as the husband, either by specific statutes, or by a more liberal interpretation of the Married Women's Acts in recognition of social changes. . . ."

In Woodson v. Bailey, supra, Justice Bouldin, in referring to loss of consortium as being the injury which a suit for alienation of affections seeks to redress, stated the following:

> "In the early common law it was limited to the rights of the husband growing out of the marriage relation. *In modern law it has come to denote the rights of either consort,* and may be said to include those collective rights of *either* husand (sic) or wife resulting from and inherent in the marital union. These rights have been defined in this form of action to include the person, affection, society, and assistance. The terms 'service,' 'aid,' 'fellowship,' 'companionship,' 'company,' 'co-operation,' and 'comfort' have also been employed in defining those mutual and special rights growing out of the marriage covenant. *The loss of consortium is the loss of any or all these rights.* 12 C.J. 532; 30 C.J. 1123, § 977; 2 Words & Phrases, First Series, 1453, 13 R.C.L. 507.
>
> "In Parker v. Newman, 200 Ala. 103, 75 So. 479, the right of the wife to sue for the alienation of the affections of the husband was fully considered and declared to be the law of Alabama. We reaffirm that case, and no further discussion on that point is called for. . . ." (Emphasis supplied)

Justice Knight, in Young v. Young, 236 Ala. 627, 184 So. 187 (1938), in interpreting the statute abolishing the cause of action for alienation of affections, etc., recited the history of such actions in these words:

> "Actions for alienation of affections and for criminal conversation are both based upon the marriage relation—*actions for the loss of consortium between the spouses from the wrongful acts of others.* Alienation of affections is the robbing of husband or wife of the conjugal affection, society, fellowship and comfort which inheres in the normal marriage relation. Criminal conversation is the defilement of the marriage bed, sexual intercourse of an outsider with husband or wife, a breaking down of the covenant relation to 'keep thee only

unto him or her so long as you both shall live.'

"By the ancient common law both these actions were limited to the husband alone.

"The emancipation of married women by modern legislation, conferring upon them *equality* in personal and property rights, *led to equality of right in the protection of the marriage relation.* So that, in modern England and in most American States a cause of action for alienation of affections or criminal conversation is recognized in favor of husband or wife *on a basis of equality.* 30 C.J. 1118, § 972; p. 1119, § 973; p. 1153, § 1032; p. 1154, § 1054; 13 R.C.L. p. 1458, § 507; p. 1459, § 508; p. 1485, § 535; p. 1487, § 537.

"*This was the law of Alabama at the time of the passage of this act,* notwithstanding a statute expressly conferred on the husband a cause of action for criminal conversation, making no mention of the wife. Code, § 5672; Parker v. Newman, 200 Ala. 103, 75 So. 479; Stephenson v. Stephenson, 213 Ala. 545, 105 So. 867." (Emphasis supplied)

There seems to be no doubt that an action for alienation of affections did not exist for wives at common law, but that the Married Women's Acts, along with a changed philosophy, established such a right in the wife. The legislature abolished this right in 1935; however, it should be noted that the Act (Title 7, § 115, Code of Alabama, 1940 (Recompiled 1958)) which abolished the civil cause of action for alienation of affections did not abolish any other remedies for the loss of consortium but was limited to specifically named causes of action. Further, it should be observed that the cause of action was abolished for husbands as well as for wives. In fact, in Young v. Young, supra, the following appears pertaining to the construction of such Act:

"Appellant's construction of this statute would strike down such actions in favor of the husband, unless the wife was under 21 years of age, but leave all actions for alienation of the husband's affections, or for criminal conversation with him, unaffected. In other words, *it would create the same inequality in favor of the wife which the ancient common law gave to the husband.*

"Neither the wording, nor the reasons for the passage of this act, warrants any such construction." (Emphasis supplied)

The concept of equality of the wife remained untarnished by this legislative act.

Up until July 14, 1960, when Smith v. United Construction Workers, Dist. 50, 271 Ala. 42, 122 So.2d 153, was rendered, a logical reading of the alienation of affections cases would have indicated that all actions for injury to loss of consortium with the exception of those specifically abolished by Title 7, Section 115, were applicable to the wife as well as to the husband.

The rationale of these cases considered the action of alienation of affections as a part of the general approach to the matter of loss of consortium and gave every indication that every remedy for loss of consortium was available to the wife as well as to the husband. Parker v. Newman, supra, recited cases construing Title 34, Section 72, Code of Alabama, 1940 (Recompiled 1958), to illustrate that the legislative intent was to give the wife a right of action in all matters in which the action had been formerly accorded only to the husband. In fact, the following portion of Foot v. Card, 58 Conn. 1, 18 A. 1027, 6 L.R.A. 829, 18 Am.St.Rep. 258 (1889), was quoted with approval in Parker v. Newman, supra:

". . . Inasmuch as by universal consent it is of the essence of every marriage contract that the parties thereto shall, in regard to this particular matter of conjugal society and affection, *stand upon an equality*, we are unable to find any support for the denial in this reason; and, the right, the injury, and the consequent damage being admitted, then

comes into operation another rule, namely, that the law will permit no one to obtain redress for wrong except by its instrumentality, and *it will furnish a mode for obtaining adequate redress for every wrong.* This rule, lying at the foundation of all law, is more potent than, and takes precedence of, the reason that the wife is in this regard without the pale of the law because of her inferiority. . . ." (Emphasis supplied)

Following the passage of the Married Women's Acts the concept of the equality of the wife in the marital relationship permeated all opinions of this court dealing with the redress of loss of consortium by actions for alienation of affections up until the abolition of that cause of action by the legislature. Some states interpreted the Married Women's Acts to give the wife a cause of action for loss of consortium only when the loss was caused by intentional conduct, but no such interpretation appears in the Alabama decisions.

This court in Smith v. United Construction Workers, Dist. 50, 271 Ala. 42, 122 So.2d 153 (1960), held that the wife did not have the right to maintain a suit for the loss of consortium. In reviewing that case it should be observed that the rationale which established the right of action in the wife for alienation of affections is no more than superficially treated. Parker v. Newman, supra, Woodson v. Bailey, supra, and Young v. Young, supra, are not distinguished at all. In fact, no reason is given whatsoever as to why the statutes removing the disability of married women did not give the wife a right of action for loss of consortium. Instead, *Smith* relied upon quoted portions of a Florida case, Ripley v. Ewell, 61 So.2d 420 (Fla.1952), and the fact that there was a paucity of jurisdictions which had judicially granted the wife such a cause of action.

I do not base my concurrence in the result of Justice Harwood's opinion in this case upon a belief that Parker v. Newman, supra, Woodson v. Bailey, supra, and Young v. Young, supra, form the basis for overruling *Smith*; but the rationale of those cases is logical and most helpful in determining the applicability of certain language appearing in the Alabama Constitution of 1901 to this problem.

Article 1, Section 1, of the Constitution of 1901, provides:

"That all men are *equally* free and *independent*; that they are endowed by their Creator with certain inalienable rights; that among these are life, liberty and the pursuit of happiness." (Emphasis supplied)

This court held long ago that such words apply to women the same as to men. O'Neal v. Robinson, 45 Ala. 526 (1871). Logical construction of the language means that all men and women are equally independent as well as free.

A parallel section of an earlier constitution of this state was interpreted by this court "to guarantee to each citizen, all the rights or privileges which any other citizen can enjoy or possess." In re Dorsey, 7 Port. 293, 361 (Ala.1838).

Article 1, Section 10, provides that no person shall be barred from prosecuting or defending before any tribunal of this state by himself or counsel any civil cause to which he is a party. Other applicable constitutional language is found in Article 1, Section 13, of the Alabama Constitution:

"That all courts shall be open; and that *every person,* for any injury done him, in his lands, goods, person, or reputation, shall have a remedy by due process of law; and right and justice shall be administered without sale, denial, or delay." (Emphasis supplied)

The similarity between the language of Article 1, Section 13, of the Alabama Constitution and the italicized language of Foot v. Card, supra, which was quoted with approval in Parker v. Newman, supra, and which was hereinbefore quoted, is interesting.

Because of these provisions of our state constitution, I feel that the result reached

by Justice Harwood's opinion in this case, allowing the wife as well as the husband to recover for the loss of the spouse's consortium caused by wrongful acts of another, is correct. I would add that this result is not only correct, but is compelled by our state's constitution; consequently, I agree that the case, Smith v. United Construction Workers, Dist. 50 supra, must be overruled.

I further point out that I have not relied upon Title 1, Section 3, Code of Alabama, 1940 (Recompiled 1958). In my opinion my position is controlled by the Constitution of Alabama rather than by an ambiguous and questionable legislative directive to the judiciary.

MERRILL, Justice (dissenting):

My disagreement with the majority opinion is not with a question of law but with the judicial policy which is advocated and followed.

This court has followed and applied English common law principles since Alabama became a state, but for the first time in the Code of 1907, the Legislature officially declared us to be a common law state. The Code section was again adopted in the 1923 Code and is presently Tit. 1, § 3, Code 1940, and reads:

> "The common law of England, so far as it is not inconsistent with the constitution, laws and institutions of this state, shall, together with such institutions and laws, be the rule of decisions, and shall continue in force, except as from time to time it may be altered or repealed by the legislature."

At the time this statute was enacted, and to the present, the common law of England was that a husband did have a cause of action for the loss of his wife's consortium and the wife did not have a right of action for the loss of her husband's consortium.

The question of the wife's cause of action did not arise in this court until 1960, and in Smith v. United Construction Workers, District 50, 271 Ala. 42, 122 So.2d 153, the trial court had followed the common law and we affirmed. This court said:

> "We are compelled to follow the common law on any subject when the same has not been changed by the legislative branch of our government. * * *
>
> \*   \*   \*   \*   \*   \*
>
> "* * * In the light of such a situation, we can but say that it is not our function to change the law, but to determine what it is. The former is vested totally in the legislature."

This court quoted extensively from Ripley v. Ewell, (Fla.), 61 So.2d 420 (1952). We copy two paragraphs:

> " 'The common law has been adopted by legislative act. It has been modified to some extent by legislative acts. If further changes are desirable in the public interest, the changes should come from legislation. This case illustrates the wisdom of such a rule and strict adherence to it. In the first place if a change in this common law is to be made it is a legislative rather than a judicial function to decide whether it is more desirable in the public interest to take away the husband's cause of action for loss of consortium which has existed since the beginning of our jurisprudence or to recognize a similar right in the wife which has never before been considered to exist. In the second place we would be blinding ourselves to known conditions if we did not appreciate the fact that almost daily accidents occur which come within the scope of the questions here presented and that in most cases the parties responsible make settlements with those injured.
>
> " 'If we were to adopt the rule asserted by appellant, all such cases, when the husband was the injured party, and within the statute of limitations, would be reopened and a new claim presented by the wife, and new liabilities imposed upon persons who have already paid once for the result of their negligent acts. While we should not hesitate to declare the law as we find it, even though the unwary

who have been ill advised in their action may suffer, we should not by judicial fiat make changes in established law that will injuriously affect many persons who could not possibly foresee or anticipate such action on our part.' "

Our opinion in *Smith* was not lengthy, and there was no application for rehearing. I considered the quoted parts from *Smith* to be good law then and I think they are good law now and should be followed.

So, from 1952 to the present, the wife had no cause of action in a suit like the instant case and the trial court so held.

The majority's action today has created a new cause of action in Alabama where one never existed at common law and has never been created by the Legislature.

Some of our statutes are merely declarations of the common law, but most of them alter, modify or are in derogation of, the common law. But the changes were made by the Legislature, the proper department in our state to effect such changes. For example, at common law, there was no cause of action for wrongful death. But the Legislature, not the courts, correctly provided for such a cause of action.

And insofar as I am informed, there has been no demand from the public that the Legislature create this cause of action. Three members of the present court served in the Legislature, others have been closely connected with it, and all of us have tried to keep informed as to bills introduced that would affect the judiciary. I do not remember that any bill creating this cause of action ever came before the House or the Senate, and I doubt if one has ever received a favorable recommendation from a standing committee if introduced.

It seems to be the present fad for appellate judges to be activists, and regardless of how long a principle has been imbedded in the law of their state, if some good argument is made for a different holding, just go ahead and change it. And this is no longer confined to changing holdings, but to inventing or creating causes of action that did not exist before.

I have joined in overruling previous decisions of this court and will continue to do so if convinced they are wrong, but I feel that I ought to leave the creation of causes of action to the Legislature where consideration can be given to many aspects of the problem and decisions as to retroactivity, etc. can be made in the statute.

Causes of action in Alabama are either statutory or common law, yet the majority has, despite the separation of powers doctrine of our Constitution, stepped over into the legislative field and created a new cause of action.

The fact that several courts of last resort have done in recent years what the majority is doing here does not automatically make it right. This does not include those courts in those states where the change was made by statute instead of court edict. Some common law states have, by statute, denied recovery for loss of consortium to both husband and wife. Others have granted it to both. And we are informed that in one state, where its court did as our majority is doing,—created a new cause of action in favor of the wife, the Legislature came right back and, *by statute*, abolished the newly court-created cause of action. It was an apt reminder that legislative matters, such as creating new causes of action, were in the legislative branch and not in the judicial branch of government.

I think it is still the function of this court to determine what the law is and to exercise judicial restraint when opportunities arise to change the law by judicial legislation.

I am aware that I am not in the present judicial stream on the subject of judicial legislation. I still feel, as Justice Cardozo wrote in "The Nature of the Judicial Process," that the judge " * * * legislates only between gaps. He fills the open spaces in the law. * * * He is not to innovate at pleasure. He is not a knight-errant roaming at will in pursuit of his own ideal of beauty or of goodness. * * *"

This position on my part is not new. In Hamilton v. State, 264 Ala. 199, 86 So.

2d 283, I wrote for the court: "* * * There are occasions when courts must correct or ignore or supply obvious inadvertences in order to give a law the effect which was plainly intended by the legislature, but we do not subscribe to the doctrine that the judiciary can or should usurp the legislative function in a republican form of government. * * *" And this statement was repeated in the opinion of Drake v. Pennsylvania Threshermen & Farmers' Mutual Casualty Ins. Co., 265 Ala. 444, 92 So.2d 11.

I would affirm the judgment of the trial court and, therefore, respectfully dissent.

COLEMAN, MADDOX and McCALL, JJ., concur.