John Williams filed suit against A.L. Williams and Associates, Inc. ("ALWA") and William Worthington, on March 28, 1983, because of injuries sustained in an assault upon him by Worthington as an agent of ALWA. The complaint was later amended to include claims for negligence, wanton misconduct, outrageous conduct, interference with business relations, and a loss of consortium count on Katherine Williams's behalf, in addition to the assault claim. The case was tried before a jury, which returned a general verdict in favor of John Williams totaling $500,000 and in favor of Katherine Williams for $1,000 on her loss of consortium claim. The jury denied the cross-claim of ALWA against its agent, William Worthington, and also denied the Williamses' claims directly against Worthington. ALWA filed motions for JNOV or new trial, and to vacate the judgment, based upon the inconsistency of the jury verdicts. The trial court denied these motions and entered judgment on the verdicts, from which ALWA appeals.
In October 1982 John Williams was recruited to sell life insurance for A.L. Williams and Associates, Inc. As an agent for ALWA, John Williams sold insurance written by Massachusetts Indemnity and Life Insurance Company (MILICO), and sold securities of First American National Securities (FANS). ALWA was founded on the premise that investors in whole life insurance could maximize their returns by buying less expensive term life insurance with MILICO and investing the difference in a mutual fund with FANS.
ALWA is a multi-level marketing plan of selling insurance and securities. John Williams joined the business in January 1983 and was quickly promoted for effectively selling insurance and securities and recruiting others to sell under him. In May of that year he was promoted to division manager, and three months later he was promoted to provisional regional vice president.
On December 1, 1983, William Worthington, the regional vice president supervising John Williams, called him into his office. Shortly thereafter, the two men got into a fistfight, the cause of which was never made clear in the record, which landed John Williams in the hospital and William Worthington in jail. John suffered a severe beating at the hands of Worthington, which included being slammed into a brick wall and being kicked about his face and body. Although the record is vague regarding *Page 598 
whether John continued to sell for ALWA after this date, it is clear that he was unable to work for a couple of weeks after the fight.
On January 18, 1984, Williams went to the ALWA offices in Atlanta to see about a transfer from supervision by Worthington to a different regional vice president. Williams was not well received in Atlanta and ALWA officers indicated that they would not grant his request for a transfer.
Although John Williams was employed to sell insurance for MILICO, he did so under a contract that granted ALWA the right to request his termination. On February 7, 1984, Worthington wrote a letter to the ALWA office in Atlanta requesting Williams's immediate termination. The letter referred to Williams as "the asshole we've been discussing." The Atlanta office attached a copy of this "filthy letter" to the termination request form it submitted to MILICO. Williams argued in the trial court that these actions, by Worthington and the Atlanta office, constituted outrageous conduct and intentional interference with his business relations with MILICO.
John Williams submitted five counts to the jury, in addition to Katherine's claim for loss of consortium, against both ALWA and Worthington. The appellant, ALWA, submitted a cross-claim against its agent, William Worthington, for indemnity. The jury returned a general verdict of $100,000 compensatory damages and $400,000 punitive damages against ALWA. The jury also returned a verdict of $1,000 against ALWA on Katherine Williams's loss of consortium claim. The fatal inconsistency occurred when the jury also denied the Williamses' claim and ALWA's cross-claim against the assailant, William Worthington.
A finding of liability on the part of Worthington was required for the negligence, wanton misconduct, outrageous conduct, and assault counts. This left the interference with business relations count as the sole basis on which the jury could have returned the verdicts for John Williams and for Worthington. Such a cause of action is insufficient, under these facts, to support a verdict on the loss of consortium claim by Katherine Williams.
This question was addressed in Slovensky v. Birmingham NewsCo., 358 So.2d 474, 476 (Ala.Civ.App. 1978), which held that a wife had no claim for loss of consortium for breach of her husband's employment contract. The court explained that recovery for loss of consortium is premised on a physical injury suffered by the spouse, citing Swartz v. United StatesSteel Corp., 293 Ala. 439, 304 So.2d 881 (1974).
Although the present case does involve physical injury and debilitation suffered by John Williams, the apparent basis for the recovery, as evidenced by the verdicts in favor of the assailant, Worthington, is interference with business relations. The verdict could not have been founded on the fight between Williams and Worthington, but instead must have been based on the actions of other agents of ALWA at the Atlanta office subsequent to the fight. Specifically, Williams alleged that the circulation of the above mentioned "filthy letter" through the Atlanta office constituted malicious interference with his business relationship with MILICO. Even if this is a sufficient basis on which to send the case to the jury, a point which this Court does not here address, it is an insufficient foundation for Katherine's claim for loss of consortium, because it does not involve physical injury to John. SeeSlovensky and Swartz, supra.
For this reason, the verdicts indicate confusion on the part of the jury. Where the jury verdict is the result of confusion or is inconsistent in law, the trial court should grant a new trial. Black Belt Wood Co. v. Sessions, 455 So.2d 802 (Ala. 1984). A new trial is necessary, because once the jury is dismissed any attempt to reconcile the inconsistencies in a verdict amounts to mere speculation about the jury's intent.
As Justice Bouldin wrote in Carter v. Franklin, 234 Ala. 116,118, 173 So. 861, 863 (1937):
 "[W]here employer and employee are sued in tort, the liability charged to the *Page 599 
employer resting solely on the negligence or wanton conduct of the employee, a verdict against the employer and in favor of the employee is due to be set aside on proper motion. It is self contradictory. It says in one aspect that the employee was guilty of negligence proximately causing injury, and because of such negligence in the line and scope of his employment, his employer is liable, while in the other aspect, it says the employee was not guilty of negligence, the proximate cause of injury. Such a verdict on its face discloses that the jury has misconceived the issues, or was prompted by bias against the employer or in favor of the employee. If a proper jury case was presented in the evidence, such verdict should, on proper motions, be set aside in toto, that the cause be retried on the merits, unhampered by questions of res adjudicata."
John Williams also argues that Katherine's motion to dismiss her claim for loss of consortium, made after the jury returned its verdicts, cured the inconsistency. But, as this Court indicated in Smith v. Richardson, 277 Ala. 389, 393,171 So.2d 96, 99 (1965), when a spouse tries her derivative claim for loss of consortium together with her husband's claim for personal injuries, "[W]e incline to the view that sound practice requires both verdicts to be set aside at once, without attempting, by analysis of the evidence or otherwise, to discover whether either should be allowed to stand. No other course is safe, for it cannot be told with reasonable certainty what facts the jury found." See also Bonds v. Busler,449 So.2d 244 (Ala.Civ.App. 1984).
Mr. Williams further contends that the inconsistency in the jury verdict was waived by ALWA's failure to object. The record indicates that the trial court granted Katherine Williams's motion to dismiss the claim for loss of consortium, with prejudice, prior to entry of judgment. His position is that ALWA's delay in objecting to the inconsistency in the verdicts until its post-judgment motion for new trial amounted to failure to preserve the error for appeal. In Lewis v. Moss,347 So.2d 91, 93 (Ala. 1977), this Court held, "While the trial Court may direct appropriate efforts toward correcting inconsistent verdicts if called to [its] attention before the jury is discharged, we find no prohibition against raising the issue of inconsistent verdicts for the first time on motion for new trial." Once the jury had been discharged, the delay in objecting to the substance of the verdict until a post-judgment motion for new trial was not prejudicial to the rights of Williams.
Based on the principles of irreconcilable verdicts, as explained above, the judgment is reversed and the case remanded for a new trial.
REVERSED AND REMANDED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.