On Rehearing Ex Mero Motu

PER CURIAM.
This Court’s opinion of June 30, 2010, in case no. 1070066, is withdrawn, and the following is substituted therefor.
In case no. 1070066, Jones Express, Inc., a defendant below, appeals from a judgment entered on a jury verdict in favor of the plaintiffs, Edward E. Jackson, Sr., and Jacqueline F. Jackson (“Jackie”),[1] both individually and as custodial parents of Joshua L. Jackson, a minor, deceased, on the Jacksons’ claim seeking damages for negligent hiring, retention, and supervision and for wrongful death. In case no. 1090663, the Jacksons appeal from a judgment entered in favor of Charles Quada on their claim seeking damages for negligence. We reverse both judgments and remand the case for a new trial.

Facts and Procedural History

During the early morning hours of March 30, 2004, Joshua L. Jackson, a minor, was driving a motor vehicle on County Road 35 in Morgan County. Edward, his father, was a passenger in the vehicle. Quada, an employee of Jones Express, was driving on Highway 67 in a tractor-trailer truck owned by Jones Express. The intersection of Highway 67 and County Road 35 is controlled by a traffic light. At the intersection, Quada’s truck and Joshua’s vehicle collided.
Both Joshua and Edward were injured in the accident. On April 7, 2004, Edward and Jackie, both individually and as custodial parents of Joshua, filed a complaint seeking damages from Quada and Jones Express stemming from the collision. Joshua died on May 15, 2004, of injuries he sustained in the collision.
The Jacksons amended their complaint several times. The last amended complaint alleged that Quada, who at the time of the accident “was on the job and acting as an agent for Jones Express,” failed to stop at a red traffic light before entering the intersection of Highway 67 and County Road 35 and colliding with Joshua’s vehicle. The complaint sought damages from Quada for negligence and wantonness and sought damages from Jones Express, under a theory of respondeat superior, for negligent entrustment and for negligent hiring, retention, and supervision. Additionally, the Jacksons sought damages against Quada and Jones Express for wrongful death. Finally, the Jacksons alleged a claim against their insurer, Alfa Mutual Insurance Company (“Alfa”), for uninsured- and/or underinsured-motorist benefits.
After discovery, the case proceeded to trial. The defendants moved for a judgment as a matter of law (“JML”) at the close of the Jacksons’ case and again at the *300 close of the evidence. Both motions were denied.
The trial court instructed the jury on three claims: (1) negligence by Quada; (2) negligent hiring, retention, and supervision on the part of Jones Express; and (3) negligent entrustment by Jones Express. As to the negligent hiring, retention, and supervision claim, the jury was instructed as follows:
“Jones Express owed a duty to Edward Jackson and Joshua Jackson to avoid inflicting injuries upon them by using reasonable care and diligence in the hiring, supervision and retention of employees who would be driving its trucks on the public roadways of this state. Reasonable care and diligence means such care and diligence as a reasonably prudent employer would use under the same or similar circumstances.
“To prevail on this negligence claim, the plaintiffs must prove to your reasonable satisfaction the following elements:
“Number one, that Mr. Quada was an incompetent driver.
“Number two, that Jones Express knew or reasonably should have known through the exercise of due diligence that Mr. Quada was an incompetent driver.
“And number three, that Jones Express failed to exercise reasonable care in ... hiring, supervising or retaining Mr. Quada after being placed on notice that he was an incompetent driver.”
As to causation for all three claims, the trial court instructed, in pertinent part:
“If, after you consider all of the evidence, you are reasonably satisfied that [Quada and Jones Express] were negligent in one or more of the respects that have been claimed by the [Jacksons] in this case, then the next thing you must do is to decide whether or not such negligence on the part of [Quada and Jones Express] was the legal or proximate cause of injuries suffered by Edward Jackson and injuries to and the death of Joshua Jackson.”
The trial court also submitted two verdict forms to the jury: one to be completed if the jury found for the Jacksons, and one to be completed if it found for Quada and Jones Express. The first form, titled “Plaintiffs Verdict,” stated:
“If, after a full and fair consideration of all the evidence, you find for the plaintiffs on one or more of their claims, then you should use the following verdict form:
“CLAIM 1: THAT THE DEFENDANTS, CHARLES QUADA AND JONES EXPRESS, INC., WERE NEGLIGENT IN OPERATING THE TRUCK AND PROXIMATELY CAUSED THE PLAINTIFFS’ INJURIES.
“We, the jury, find in favor of the plaintiffs on this claim and against the defendants, Charles Quada and Jones Express, Inc.
[[Image here]]
Foreperson
“CLAIM 2: THAT THE DEFENDANT, JONES EXPRESS, INC., WAS NEGLIGENT IN THE HIRING, SUPERVISION OR RETENTION OF CHARLES QUADA AND PROXIMATELY CAUSED THE PLAINTIFFS’ INJURIES.
“We, the jury, find in favor of the plaintiffs on this claim and against the defendant, Jones Express, Inc.
[[Image here]]
Foreperson
“CLAIM 3: THAT THE DEFENDANT, JONES EXPRESS, INC. NEGLIGENTLY ENTRUSTED ITS VEHICLE TO CHARLES QUADA *301 AND PROXIMATELY CAUSED THE PLAINTIFFS’ INJURIES.
“We, the jury, find in favor of the plaintiffs on this claim and against the defendant, Jones Express, Inc.
[[Image here]]
Foreperson”
(Capitalization in original.) The trial court further instructed the jury that, as to each claim, if it was satisfied of the truthfulness of the claim, or if the verdict form represented its verdict, the foreperson should sign his or her name under the applicable claim. The verdict form also provided a space for the jury to designate an award of damages.
As to the second form, titled “Defendants’ Verdict,” the trial court instructed:
“Now, ladies and gentlemen, after a full and fair consideration of all of the evidence, if you find for the defendants on all claims, then you would use the separate verdict form that says Defendants’ Verdict and reads: We, the jury, find in favor of the defendants and against the plaintiffs on all claims. And it would be signed by your foreperson, and you would be ready to report your verdict.’ ”
Unlike the plaintiffs verdict form, this form did not provide the jury the opportunity to render a verdict in favor of the defendants on each individual claim or in favor of an individual defendant.
After deliberations, the jury returned the “Plaintiffs Verdict” form with the foreperson’s signature under the negligent hiring, retention, and supervision claim, as well as an award of $600,000 in compensatory damages and $100,000 in punitive damages. On April 25, 2007, the trial court entered a judgment in favor of the Jacksons and against Jones Express based on that verdict:
“In accordance with the jury’s verdict returned in this action on this date, it is hereby ORDERED AND ADJUDGED by the Court that a judgment be, and hereby is, entered in favor of the plaintiffs, Edward E. Jackson and Jackie Jackson, and against the defendant, Jones Express, Inc., for compensatory damages in the amount of $600,000.00 and for punitive damages in the amount of $100,000.00, awarding total damages in the sum of $700,000.00, plus the costs of court, for which let execution issue.”
Jones Express filed a renewed motion for a JML; a motion to alter, amend, or vacate the judgment entered on the jury’s verdict; and a motion for a new trial. The trial court denied those motions, and Jones Express appealed (case no. 1070066).
On June 26, 2008, this Court, noting that the trial court’s April 25, 2007, order did not indicate that a judgment had been entered with respect to the claims against Quada or Alfa and, thus, that the judgment appealed from appeared to be nonfinal, remanded the case for the trial court (1) to certify the judgment in favor of the Jack-sons against Jones Express as a final judgment pursuant Rule 54(b), Ala. R. Civ. P.; (2) to adjudicate the remaining claims, thus making the judgment final and ap-pealable; or (3) to do nothing, in which case the appeal would be dismissed as being from a nonfinal judgment.[2]
*302 On July 2, 2008, on remand, the trial court entered a judgment restating its April 25, 2007, judgment in favor of the Jacksons and against Jones Express on the negligent hiring, retaining, and supervising claim. The trial court also entered a judgment in favor of Quada, Jones Express, and Alfa on all the Jacksons’ remaining claims.
According to the record in case no. 1090663, on August 1, 2008, the Jacksons filed a Rule 59(e), Ala. R. Civ. P., motion to alter, amend, or vacate the trial court’s July 2 order. They argued, among other things, that the jury had not rendered a verdict in favor of Quada and that the trial court’s July 2 ruling in favor of Quada was “in conflict” with the jury’s finding against Jones Express. On August 4, 2008, Jones Express filed in this Court a motion to stay the appeal in case no. 1070066 pending resolution of the Jacksons’ motion, contending that a cross-appeal by the Jack-sons may result or that the issues raised by Jones Express on appeal may be impacted. This Court granted the motion to stay.
On August 22, 2008, the trial court issued an order vacating its July 2, 2008, order. The court, referencing the Jack-sons’ postjudgment motion and its failure to hold a hearing or to give the parties an opportunity to address this Court’s remand order, held that it “should have allowed the appeal to be dismissed as from a non-final judgment and then addressed the remaining issues and claims after receiving input from all parties.” The trial court therefore vacated the July 2 order.[3] After a hearing, the trial court issued an order on November 12, 2008, finding, specifically, that Alfa was not liable to the Jacksons and then stating:
“Under the circumstances as shown by the disputed evidence presented during the trial of this case, the question of liability on the part of the defendant, Charles D. Quada, the driver of the tractor-trailer, hinged on the jury’s answer to these simple questions: did he run the red light or did Joshua Jackson run the red light at the intersection where the collision occurred? Having considered its instructions to the jurors, the separate and independent claims they were allowed to consider during their deliberations and their verdict, it is ordered that the Judgment entered in this case on April [25], 2007, constitute an adjudication of liability against the defendant, Charles D. Quada, as well as against his employer, Jones Express, Inc., with damages assessed only against the latter.
“For the reasons stated above, the undersigned determines that no claims, *303 rights or liabilities remain to be adjudicated in this case and that a final judgment be, and hereby is, entered.”
This Court again remanded the case, holding that it was unclear how the trial court’s November 12 order disposed of the claim against Quada. In an order dated January 26, 2010, the trial court entered the following judgment:
“(1) A judgment is entered in favor of the defendant, ALFA Mutual Insurance Company (ALFA’), and against the plaintiffs, separately and severally, on all of their claims against ALFA for uninsured or underinsured motorist benefits.
“(2) A judgment is entered in favor of the defendant, Charles D. Quada (‘Qua-da’), and against the plaintiffs, separately and severally, on their claim of damages alleged against Quada, individually, for negligence.
“(3) A judgment is entered in favor of the defendant, Jones Express, Inc. (‘Jones Express’), and against the plaintiffs, separately and severally, on their claim of damages against Jones Express under a theory of respondeat superior in connection with the claim of negligence against Quada.
“(4) A judgment is entered in favor of the defendant, Jones Express, and against the plaintiffs, separately and severally, on their claim of damages alleged against Jones Express for negligent entrustment.
“(5) A judgment is entered in favor of the plaintiffs, Edward E. Jackson, Sr., and Jackie Jackson, and against the defendant, Jones Express, for compensatory damages in the amount of $600,000.00 and for punitive damages in the amount of $100,000.00, awarding total damages in the sum of $700,000.00, plus costs, on the plaintiffs’ claim of damages alleged against Jones Express for negligent hiring, retention and supervision.”
Subsequent to this order, the Jacksons filed a separate appeal that was assigned case no. 1090663. We will consider the Jacksons’ appeal in case no. 1090663 as a cross-appeal and consolidate it with case no. 1070066 for purposes of issuing one opinion.

Discussion

On appeal, Jones Express contends that the jury’s verdict was inconsistent because it found Jones Express liable for negligently hiring, retaining, and supervising Quada, despite the fact that it also entered a verdict “exonerating” Quada of any wrongdoing. The Jacksons, on the other hand, argue that the trial court erred in entering a judgment in favor of Quada on the negligence count. In the alternative, they argue that, if the trial court did not err in entering the judgment for Quada on the negligence count, the verdict is inconsistent and a new trial is warranted.
A verdict has been described as “inconsistent” when the jury “inconsistently resolved the same issue in two separate counts,” State Farm Fire & Cas. Co. v. Slade, 747 So.2d 293, 319 (Ala.1999), when the verdict appears to be “the result of confusion,” City of Bessemer v. Foreman, 678 So.2d 759, 760 (Ala.1996), or when the record in a case does not reveal a situation in which the jury’s decisions can coexist, Ex parte Alfa Mut. Ins. Co., 799 So.2d 957, 962 (Ala.2001). See also Smith v. Richardson, 277 Ala. 389, 391, 171 So.2d 96, 97 (1965) (stating that differing verdicts on separate but identical claims filed by separate parties were “clearly inconsistent, having been rendered at the same time by the same jury, on identical facts, [and having] render[ed] speculative what the jury intended by its verdicts. Patently, the verdicts indicate confusion on the part of the jury.”). When a jury verdict is incon *304 sistent, the proper remedy is a new trial. Bessemer, 678 So.2d at 760. This is so because “any attempt to reconcile the inconsistencies in a verdict must be based on mere speculation about the jury’s intent.” Id.; see also A.L. Williams & Assocs., Inc. v. Williams, 517 So.2d 596, 598 (Ala.1987) (“Where the jury verdict is the result of confusion or is inconsistent in law, the trial court should grant a new trial. A new trial is necessary, because once the jury is dismissed any attempt to reconcile the inconsistencies in a verdict amounts to mere speculation about the jury’s intent.” (citation omitted)).
It has been stated generally that, in order for an employer to be liable for the negligent hiring, training, retention, and supervision of its employee, the plaintiff must also prove “wrongful conduct” on the part of the employee. University Fed. Credit Union v. Grayson, 878 So.2d 280, 291 (Ala.2003) (“[A] party alleging negligent supervision and hiring must prove the underlying wrongful conduct of the defendant’s agents.”); Voyager Ins. Cos. v. Whitson, 867 So.2d 1065, 1073 (Ala.2003) (“A party alleging negligent or wanton supervision and hiring must also prove the underlying wrongful conduct of employees.”); see also Stevenson v. Precision Standard, Inc., 762 So.2d 820 (Ala.1999) (holding that a jury verdict against an employer based on negligent training and supervision of a supervisor who allegedly sexually harassed a fellow employee could not stand where the jury also exonerated the supervisor); Smith v. Boyd Bros. Transp., Inc., 406 F.Supp.2d 1238, 1248 (M.D.Ala.2005) (“Under Alabama law, the finding of underlying tortious conduct is a precondition to invoking successfully liability for the negligent or wanton training and supervision of an employee.”); and Thrasher v. Ivan Leonard Chevrolet, Inc., 195 F.Supp.2d 1314, 1320 (N.D.Ala.2002) (“In order to establish a claim against an employer for negligent supervision, training, and/or retention, the plaintiff must establish that the allegedly incompetent employee committed ... [a] tort.”).
Jones Express, citing Stevenson v. Precision Standard, Inc., supra, alleges that the jury’s failure to find Quada liable for negligence conflicts with the verdict in favor of the Jacksons on their negligent hiring, retention, and supervision count against Jones Express. In Stevenson, the plaintiff, Stevenson, brought an action against her employer, Pemco, and her former supervisor at Pemco, Windsor, alleging invasion of privacy and negligence and/or wantonness based upon Windsor’s alleged sexual harassment. The jury returned a verdict against Pemco but exonerated Windsor from any liability.
On appeal, Pemco contended that the verdict was inconsistent and due to be set aside. Stevenson countered that a verdict for an employee and against an employer is inconsistent only when the employer’s liability is based solely on the theory of respondeat superior. In her case, Stevenson argued that she asserted “independent claims” against Pemco alleging negligence and wantonness, specifically, that Pemco had acted negligently or wantonly in supervising or training its employees, a cause of action that was recognized in Big B, Inc. v. Cottingham, 634 So.2d 999 (Ala.1993). This Court distinguished Big B, however, noting that the cause of action in that case “was predicated on the underlying tortious conduct of an employee ... who at trial admitted wrongdoing.” 762 So.2d at 824. This Court further noted the holding in Potts v. BE & K Construction Co., 604 So.2d 398 (Ala.1992), that an employer could be liable for the intentional torts of its agent if the employer participated in, authorized, or ratified the wrongful acts, but that to prove such liability one *305 must demonstrate, among other things, “the underlying tortious conduct of an offending employee...” 762 So.2d at 824. We concluded:
“Under this Court’s holdings in Big B and Potts, the only means of attaching liability to Pemco would be to prove wrongful conduct by Windsor as its agent. But, Pemco simply cannot be held liable for authorizing or ratifying conduct that, according to the jury, did not occur. Accordingly, a verdict against Pemco based on a finding of negligent training and supervision would be inconsistent with a verdict exonerating Windsor.”
Stevenson, 762, So.2d at 824-25.
As Stevenson and Big B demonstrate, and as the additional authorities cited above indicate generally, implicit in the tort of negligent hiring, retention, training, and supervision is the concept that, as a consequence of the employee’s incompetence, the employee committed some sort of act, wrongdoing, or tort that caused the plaintiffs injury. Humana Med. Corp. of Alabama v. Traffanstedt, 597 So.2d 667, 669 (Ala.1992) (holding that it was “inherently inconsistent from a proximate cause standpoint” for a jury to hold that a physician was not negligent in performing surgery but to also hold the hospital liable based on its “independent negligence” in failing to supervise and monitor that physician). Cf. Bonds v. Busler, 449 So.2d 244, 245 (Ala.Civ.App.1984) (“We find it settled law in this state that though an entrustor may be guilty of negligent entrustment of a vehicle to an incompetent driver, he may not be held liable for such negligence unless the injury is proximately caused by the incompetence of the entrustee.”); Lane v. Central Bank of Alabama, N.A., 425 So.2d 1098, 1100 (Ala.1983) (noting that, in a cause of action against a master based upon the incompetence of the servant, the plaintiff must show, among other things, that he has been damaged by the acts of the servant and that the damage occurred because of incompetency on the servant’s part); and First Nat’l Bank of Montgomery v. Chandler, 144 Ala. 286, 307, 39 So. 822, 828 (1905) (“ ‘It is understood, of course, that the incompetency of the servant in all cases, in order to charge the master, was the proximate cause of the injury.’ ” (quoting Bailey on Master’s Liability for Injuries to Servants, 47, 54, 70)).
The Jacksons argue that their negligent hiring, retention, and supervision claim is an “independent” tort that did not depend on a finding of negligence in the underlying tort claim against Quada. Further, the Jacksons correctly note that the jury was presented with substantial evidence for each element of the negligent hiring, retention, and supervision claim as instructed by the trial court: (1) that Quada was an incompetent driver, (2) that Jones Express knew or reasonably should have known that Quada was an incompetent driver, (3) that Jones Express failed to exercise reasonable care in hiring, retaining, or supervising Quada after being placed on notice that he was an incompetent driver, and (4) that Jones Express’s negligence was the legal or proximate cause of injuries suffered by Edward and Joshua.[4]
However, the issue presented on appeal is not whether there was a failure to prove the elements of the negligent hiring, retention, and supervision claim as instructed by the trial court; instead, the issue is whether the jury’s verdict against Jones Express is inconsistent with its failure to *306 find Quada liable for negligence in the very same factual situation that caused Edward’s and Joshua’s injuries. In other words, does the verdict indicate that the jury inconsistently resolved the same issue in two different counts or that it was otherwise confused?
The dispositive question presented to the jury in this case, according to the parties and the trial court, was who ran the red light at the intersection — Quada or Joshua. As the trial court noted in its order denying Jones Express’s post-judgment motions, “the [Jacksons] and Jones Express recognize that liability in this case centered on the jury’s factual determination as to whether Quada or Joshua ran the red light.”[5] Further, the trial court instructed the jury that “it is negligence as a matter of law for a motor vehicle to run a red light that is exhibited by a traffic control device.”
Thus the inconsistency in this case arises because of the jury’s apparently un-reconeilable resolution of the dispositive issue: whether Quada ran the red light. This was the sole act of negligence alleged against Quada and the sole act of incompetency or wrongdoing on Quada’s part as an employee of Jones Express that allegedly caused the Jacksons’ injury under their negligent hiring, retention, and supervision claim. It is inconsistent for the jury to conclude, on the one hand, that Quada ran the red light for purposes of the negligent hiring, retention, and supervision claim against Jones Express, but then not to render a verdict in favor of the Jacksons on their negligence claim against Quada.
Both sides attempt to address this inconsistency. Jones Express argues that the jury’s failure to find that Quada was negligent indicates that it did not find that he ran the light (Jones Express’s brief, at 28); the Jacksons, on the other hand, ai'-gue that Quada “was necessarily found guilty of running the red light in this case because the jury rejected contributory negligence.” Although both theories are reasonable theories by which to address the inconsistency in the jury’s decision, both theories engage in speculation as to the jury’s intent.[6] The jury could have found that Quada was negligent but failed to indicate that on the jury form, or the jury could have found that he acted negligently but attempted to impose liability only on Jones Express. As this Court once stated in a case discussing an inconsistent verdict in which a jury exonerated an employee’s conduct but also attempted to find the employer liable for that conduct: “Such a verdict on its face discloses that the jury has misconceived the issues, or was prompted by bias against the employer or in favor of the employee.” Carter v. Franklin, 234 Ala. 116, 118, 173 So. 861, 863 (1937). Instead of engaging in speculation in an attempt to reconcile the jury’s decision, we simply hold that it is inconsistent.
In its order denying Jones Express’s postjudgment motions, the trial court relied on Luker v. City of Brantley, 520 So.2d 517, 518 (Ala.1987), and held that the negligent hiring, retention, and supervision claim was an “independent” tort and that, *307 under Luker, the trial court needed only to “resolve the question of whether the evidence supported a claim against [Jones Express] for its independent negligence. Only if such a claim was not sustained by the evidence could [it] grant a new trial for the apparent inconsistency.” 520 So.2d at 523.
In Luker, the plaintiff, Luker, sued the City of Brantley (“the City”) and two police officers employed by the City, Ennis and Armstrong, for releasing an automobile to an intoxicated driver, Patrick, who later caused an accident in which the plaintiffs decedent was killed. Luker sued En-nis and Armstrong on claims of negligence and negligent entrustment and sued the City, alleging that it “had negligently failed to instruct these officers as to the proper manner in which to enforce the laws regarding intoxicated individuals.” Luker, 520 So.2d at 518. The jury returned a verdict against the City but in favor of the officers. The City moved for a judgment notwithstanding the verdict (“JNOV”),[7] which the trial court granted, setting aside the verdict against the City. Luker appealed from the JNOV.
On appeal, the City argued that the JNOV in its favor was proper because, it said, the jury’s verdict was inconsistent. This Court reversed the JNOV in favor of the City, reasoning that a JNOV was not appropriate because the City was not entitled to a directed verdict at the conclusion of the evidence based on jury issues as to vicarious liability. Further, despite the jury’s verdict in favor of the officers, this Court appeared to assume that the officers acted negligently:
“Our decision that the actions of [the officers,] in and of themselves, constitute negligence ... pretermits discussion of whether, in a particular case, the actions of the officers’ superiors in failing to enroll them in the required minimum standards training programs could be considered the proximate cause of injury. Whether or not [the officers] had this training, it is clear that they acted negligently in allowing Patrick, under the circumstances of this case, to operate the automobile in an intoxicated state.”
520 So.2d at 520.
On rehearing, this Court attempted to clarify the scope of its order remanding the case for a determination as to whether a new trial was appropriate based on alleged inconsistent verdicts. The Court stated:
“We held that there was evidence that the officers were negligent while acting in the line and scope of their duty and, thus, that the City could have been held vicariously liable; therefore, the City’s judgment notwithstanding the verdict was reversed. The jury verdict for the officers and against the City could not be reconciled if the only claim against the City was predicated on the underlying negligence of the officers. Apparently, however, the plaintiff also pursued a claim against the City for its independent negligence in improperly training the officers.
“Before the trial court can grant a new trial based upon the apparent inconsistency of the verdicts, it must resolve the question of whether the evidence supported a claim against the City for its independent negligence. Only if such a claim was not sustained by the evidence could the trial court grant a new trial for the apparent inconsistency....
“If the trial court resolves these two issues favorably to the plaintiff, the ap *308 propriate action will be the reinstatement of the verdict and the judgment entered thereon. Otherwise, the trial court will grant a new trial, specifying the grounds made the basis of its new trial order.”
Luker, 520 So.2d at 523.
Luker appears to hold that a new trial based on the inconsistency of the verdict was warranted in that case only if the evidence did not support the improper-training claim. If such evidence had been presented, then the trial court was required to enter a judgment against the City alone based on the jury verdict. Id.
This analysis differs from our subsequent holding in Stevenson, supra. There, we examined whether the evidence, under the employee’s “independent” claims against the employer, Pemco, could support the judgment against Pemco “while simultaneously absolving” the supervisor, Windsor, “of any wrongdoing.” Stevenson, 762 So.2d at 824. We held, as noted above, that Pemco could not be liable for conduct that, according to the jury, did not occur. Further, the evidence did “not support a judgment against Pemco on any theory other than respondeat superior.” 762 So.2d at 827. However, the judgment entered on the jury’s verdict in favor of Windsor was not appealed and became final; “therefore, the doctrine of res judi-cata bar[red] a new trial on the issue of Windsor’s liability.” Stevenson, 762 So.2d at 827. Because Windsor, as the employee, could no longer be held liable for the tort claims asserted against him, Pemco could not be held liable under the doctrine of respondeat superior[8] and was thus entitled to a judgment in its favor:
“[Bjecause Stevenson did not appeal from the judgment in favor of Windsor, that judgment has become final; therefore, the doctrine of res judicata bars a new trial on the issue of Windsor’s liability. Because the judgment against Windsor must stand, a judgment must be entered in favor of Pemco. See de Feliciano v. de Jesus, 873 F.2d 447 (1st Cir.1989)(in light of an inconsistent verdict, corporate codefendant was held entitled to a judgment, where plaintiffs did not appeal from judgment in favor of codefendant president of corporation); see, also, United Steelworkers of America AFL-CIO-CLC v. O’Neal, 437 So.2d 101, 103 (Ala.1983) (on a claim directly against an agent, and against the principal solely on the theory of respondeat superior, ‘a verdict in favor of the agent works an automatic acquittal of the principal so that [the] verdict against [the principal] must be set aside’); and Perry v. Costa, 97 A.D.2d 655, 469 N.Y.S.2d 193 (1983) (doctrine of res judicata barred new trial on question of employer’s liability, based on final judgment in favor of employee; judgment against employer reversed).”
762 So.2d at 827 (footnote omitted).
The plaintiff in Luker did not appeal the judgment entered on the verdict in favor of the employees/officers; however, the Luker Court failed to recognize the significance of this omission. Had the Court done so it would have been obliged to affirm the trial court’s order entering a JNOV in favor of the City/employer based on the alternative ground that the failure of proof on the essential element of negligence of the employees/officers had become res judicata on that issue. Instead, *309 the Luker Court recognized a right to a jury verdict against the City for improper training in terms consistent with an independent action against the City, regardless of the fact that the jury rendered a verdict in favor of the employees/officers on the negligence claim against them. Such a result is erroneous and inconsistent with Stevenson, which sub silentio overruled Luker.
Having determined that the jury’s verdict here was inconsistent, we must decide the correct disposition of these appeals. Jones Express maintains that the judgment on the negligent hiring, retention, and supervision count is due to be reversed and that it is entitled to a judgment in its favor. Specifically, in its brief in case no. 1070066, which was filed before this Court remanded the case and before the trial court entered its January 26, 2010, final judgment, Jones Express argued that Quada had been “exonerated” by the jury on the negligence count. A new trial on this count, which is an essential element of the negligent hiring, retention, and supervision claim against Jones Express was not possible because the judgment in Quada’s favor had not been appealed. Because the issue of Quada’s liability could not be retried, Jones Express argued, it was entitled, under Stevenson, to a judgment rendered in its favor.
However, under the peculiar facts of this case, the Jacksons could not have maintained an appeal from the trial court’s November 12, 2008, order because it was not final and because it did not actually evidence a judgment in Quada’s favor. Instead, the trial court’s January 26, 2010, judgment was the first final judgment in Quada’s favor on the negligence count, and the Jacksons have appealed from that judgment. In their brief in case no. 1070066, the Jacksons maintain that, if the jury’s verdict in this case is considered inconsistent, then the proper remedy is actually a new trial. We agree.

Conclusion

The judgment against Jones Express on the negligent hiring, retention, and supervision claim and the judgment in favor of Quada on the Jacksons’ negligence claim are reversed, and the case is remanded for a new trial. Bessemer, 678 So.2d at 760; A.L. Williams & Assocs., Inc., 517 So.2d at 598.[9]
1070066 — ON REHEARING EX MERO MOTU: OPINION OF JUNE 80, 2010, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
1090663 — REVERSED AND REMANDED.
COBB, C.J., and LYONS, WOODALL, STUART, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.

. Jacqueline F. Jackson is sometimes referred to as "Jackie Jackson" in the record below.

. In its brief filed in case no. 1090663, Jones Express contends that the April 25, 2007, order was in fact a final judgment. Specifically, Jones Express argues that a jury's verdict in favor of a plaintiff with respect to some defendants but silent with regard to other defendants should be considered as equivalent to a verdict in favor of those defendants. However, although the trial court may have entered a judgment on the jury’s verdict against Jones Express on the negligent hiring, retention, and supervision claim, the order does not specify a judgment in favor or *302 against Quada or Alfa on the other claims in this case.

. In its brief filed in case no. 1090663, Jones Express contends that the August 22 order was not entered in response to the Jacksons’ Rule 59(e) motion but was instead a sua sponte order that the trial court had no jurisdiction to issue. However, it is clear from the trial court's order that it was in response to the issues raised in the Jacksons’ motion.
Jones Express also contends that the trial court’s actions in vacating its July 2 order and holding a hearing violated this Court’s appellate mandate. However, this Court's order of June 28, 2008, gave the trial court the option of certifying a final judgment, adjudicating the remaining claims, or allowing its judgment to remain nonfinal. The trial court initially chose to adjudicate the remaining claims, but, in response to a timely post-judgment motion challenging the propriety of that selection, the trial court vacated its decision and chose the third option. This did not violate this Court's mandate; in fact, this Court stayed the appeal — at Jones Express's request- — to allow the trial court to exercise its options in response to the postjudgment motion.

. We express no opinion as to whether the trial court correctly instructed on the elements of a claim of negligent hiring, retention, and supervision.

. Jones Express contends: “At issue before the jury was the determination as to which of the vehicles had the right of way at the traffic light at the time of the collision, and which of the vehicles did not.” Jones Express’s brief, at 9; see also the Jacksons’ brief, at 25 (quoting same).

. The trial court engaged in similar speculation in apparently concluding in its November 12, 2008, order that the verdict on the negligent hiring, retention, and supervision claim amounted to a finding by the jury of liability against both Quada and Jones Express, but that the jury intended to assess damages against only Jones Express.

. A motion for a JNOV is now designated, under Rule 50(b), Ala. R. Civ. P., as a renewed motion for a JML. Vaughan v. Oliver, 822 So.2d 1163, 1170 (Ala.2001).

. Under the doctrine of respondeat superior, "a principal is liable for the tort of his agent if the agent commits the tort while acting within the scope of his employment. If the agent is not liable for any tort, the principal is also absolved.” Latham v. Redding, 628 So.2d 490, 495 (Ala.1993) (citation omitted).

. Because of our resolution of this case, we pretermit discussion of the remaining issues raised on appeal.